U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

SEP 1 9 2012

TONY R. MO[...]  CLERK
BY_____ DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

---

JAMES CURTIS SUTTON

VERSUS

LARRY C. DEEN, BOSSIER PARISH
SHERIFF, ET AL.

CIVIL ACTION NO: 11-1605

JUDGE DONALD E. WALTER

MAGISTRATE JUDGE HORNSBY

---

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed on behalf of Sheriff Larry C. Deen, ("Deen"), Deputy Cedric Payne ("Payne"), Sgt. Clent Rambin ("Rambin") and the Bossier Parish Sheriff's Office ("BPSO"). [Doc. #11]. Plaintiff, James Curtis Sutton ("Sutton"), opposes this motion. [Doc. #16]. For the reasons assigned herein, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT OF THE CASE

Plaintiff alleges that Defendants violated his civil rights pursuant to 42 U.S.C. § 1983 for unlawful entry, unlawful arrest, and excessive force. Plaintiff also alleges related violations of Louisiana law.

On September 4, 2010, BPSO received complaints from two citizens about loud music being played at Plaintiff's home in Elm Grove, Louisiana. [Doc. # 11-1, Statement of Uncontested Material Facts at 1]. Plaintiff was having a retirement part at his home, which began at approximately 1:00 p.m. The initial loud music complaint was received by BPSO at 1:06 p.m. and was reported by Plaintiff's neighbor, Mr. Turner. [*Id.* at 3]. Deputy Payne was dispatched at 1:07 pm to address the complaint. [*Id.* at 4]. Sgt. Rambin decided to assist Payne in responding to the complaint because

loud music complaints are historically problematic. [*Id.* at 5]. Payne and Rambin proceeded to Mr. Turner's home to discuss the complaint. [*Id.* at 6]. Shortly thereafter, BPSO received a second complaint of loud music from another neighbor, Ms. Rose Roberts. [*Id.* at 7]. Payne and Rambin then proceeded to Plaintiff's residence. [*Id.* at 8].

Payne and Rambin stopped outside of the gate that separates Plaintiff's property from the public road. [*Id.* at 9]. Plaintiff's home sits on a substantial amount of land and is more than a quarter of a mile from the gate area (next to the public road) where the events surrounding this lawsuit occurred. [*Id.* at 10]. Plaintiff arrived at the gate, opened it, and approached Payne and Rambin. [*Id.* at 11]. Payne attempted to explain the loud music complaints to Plaintiff and obtain his cooperation in addressing the level of the music. [*Id.* at 12]. Plaintiff became upset and complained to Payne and Rambin about his ongoing difficulties with his neighbor, Mr. Turner, and appeared upset that the deputies were called. [*Id.* at 13].

The parties dispute what occurred next. Payne describes Plaintiff as being non-compliant with his command to calm down so that he could explain the situation. [Payne Deposition at 53]. Payne states that Plaintiff was so upset that he was unable to explain to him that they were only at his residence to ask that he keep his music at a level that would not disturb the neighbors. *Id.* Payne describes the Plaintiff as becoming louder and louder, to the point that he became uncomfortable with the tone of the conversation. [*Id.* at 54]. Payne states that this point he stepped aside from Plaintiff and began speaking to one of Plaintiff's friends to see if the friend could calm the Plaintiff. [*Id.* at 54]. He states that his attention was turned back towards Plaintiff because he was in a "shouting match" with Sgt. Rambin. [Id. at 55]. Payne states that Plaintiff was told to calm down or he could be placed under arrest for being uncooperative and for disturbing anyone in the area. [*Id.*

at 56]. Payne states that he witnessed Plaintiff touch Rambin with sufficient force to push Rambin backwards. [*Id.* at 58]. At that point Payne immediately went to Rambin's aid to get Plaintiff under control. [*Id.* at 58]. The two officers state that they struggled to get Plaintiff under control and in custody, and that Rambin had to use one spray of mace before they could get both of Plaintiff's arms behind his back and his hands in handcuffs. [*Id.* at 62-67]. Rambin concurred with Payne's description of events in his deposition

Plaintiff describes his encounter with police much differently. Plaintiff states that when Payne arrived he explained to him that his neighbors were retaliating against him by making a false noise report, which was evident by the non-disruptive level the music was being played at when Payne arrived. Plaintiff claims that nothing about his conduct with deputy Payne was inappropriate and Payne seemed satisfied that nothing was wrong, but that Rambin did not. Plaintiff denies that he was being aggressive in any manner or that the deputies asked him to calm down. Plaintiff denies cursing or threatening the deputies, and claims that he was compliant with their orders. Plaintiff denies that he resisted the deputies before his arrest. Finally, Plaintiff states in his deposition that he was not sprayed with mace until after he was placed in handcuffs. [Sutton deposition at 63].

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [1]  A fact is "material" if it may affect the outcome of the suit under

---

[1] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many

governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. *Id.* The court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mutual Auto Insurance Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The moving party bears the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309 (5th Cir. 1999). The moving party need not produce evidence to negate the elements of the non-moving party's case, but need only point out the absence of evidence supporting the non-moving party's case.  *Celotex Corp.*, 477 U.S. at 325; *Lawrence*, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted).

Pursuant to Local Rule 56.1, the moving party shall file a short and concise statement of the

---

courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this court will rely on it accordingly.

material facts as to which it contends there is no genuine issue to be tried. Local Rule 56.2 requires that a party opposing the motion for summary judgment set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

**LAW AND ANALYSIS**

**A.      Unlawful Entry**

Plaintiff alleges that Defendants unlawfully entered his property in violation of the Fourth Amendment. Defendants move for summary judgment because they allege they were given consent to enter the property. In the alternative, Defendants argue that the area where this incident took place is too far removed from Plaintiff's home to be considered protected curtilage. The court notes that Plaintiff did not oppose summary judgment on this claim.

Based on a review of Plaintiff's deposition it does appear that Plaintiff consented to the deputies entry onto his property. The Plaintiff's property was protected by a gated entry, which was set up to open when a vehicle is driven to a certain spot in the driveway. Plaintiff stated in his deposition that he drove an all-terrain vehicle up to the gate, which automatically opened. [Sutton deposition at 65-66]. It is only logical that a homeowner would have knowledge of where he could drive on his own property without triggering the gate to open. Plaintiff could have parked his vehicle further back in his driveway and walked up to the gate to speak to the deputies. Accordingly, the court concludes that Plaintiff provided consent for the deputies to enter his gate.

However, even if consent were not given this claim must fail. The Fourth Amendment only extends to a plaintiff's expectation of privacy in his home and surrounding curtilage. Whether an

5

area is protected curtilage is determined by looking to the following factors: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by passersby. *U.S. v. Mckeever*, 5 F.3d 863, 867 (5th Cir. 1993).

It is undisputed that the gate was approximately a quarter of a mile from Plaintiff's home. Additionally, the area immediately inside the gate is clearly visible to the public who may happen to pass by on the public road.   The gate is slatted and does not provide privacy from observation. These factors are sufficient to find that the area in question is outside the curtilage of Plaintiff's home.  Accordingly, Plaintiff's claims for unlawful entry are dismissed with prejudice.

**B.     False Arrest**

The court finds that a genuine dispute of material fact remains regarding Plaintiff's claim of false arrest, which is sufficient to proceed to trial.  Defendant's motion for summary judgment on this claim is denied.

**C.     Excessive Force**

Defendants' motion for summary judgment regarding Plaintiff's claim of excessive force against Deputy Cedric Payne is granted.  Plaintiff admits in his deposition that he has no complaint about the degree of contact between himself and Deputy Payne. [Sutton deposition at 63]. Defendants' motion for summary judgment regarding Plaintiff's claims of excessive force against Sgt. Rambin is denied.  Plaintiff states in his deposition that Rambin maced him after he was placed in handcuffs, while Rambin maintains that he maced Plaintiff before he was placed in handcuffs and because Plaintiff was non-compliant.  A genuine dispute of material fact remains to be determined

at trial.

### D.    Claims Against Sheriff Deen and the Bossier Parish Sheriff's Office

Plaintiff asserts a claim against Sheriff Larry Deen in his individual capacity. This claim must be dismissed because Plaintiff has not alleged that Sheriff Deen had any personal involvement in the events surrounding his arrest. *See Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005).

Plaintiff also asserts claims against Deen, in his official capacity, and the BPSO. To establish a claim against Deen in his official capacity the Plaintiff must demonstrate that Deen (1) failed to supervise or train the involved officers, (2) that a causal connection existed between the failure to train supervise or train and the violation of Plaintiff's rights, and (3) that the failure to train or supervise amounted to deliberate indifference to Plaintiff's constitutional rights. *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378 (1989); *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)). Similarly, to establish a claim against BPSO the Plaintiff must identify a constitutionally deficient policy or custom that caused his injury. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 689 (1978). "To succeed on a *Monell* claim against a local government entity, the plaintiff must establish (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Id.* (citing *McGregory v. City of Jackson*, 335 Fed.Appx. 446, 448 (5th Cir. 2009)).

Plaintiff does not assert a flawed custom, policy or practice, nor does he articulate how such a flawed custom, policy or practice affected his constitutional rights. Accordingly, Plaintiff's claims

against Sheriff Deen in his official capacity and the BPSO are dismissed with prejudice.

## CONCLUSION

For the reasons stated herein, Plaintiff's claims for unlawful entry are dismissed with prejudice.  Plaintiff's claim of excessive force against Deputy Payne is dismissed with prejudice. Plaintiff's claims against Sheriff Deen in his individual and official capacity are dismissed with prejudice.  Plaintiff's claim against the BPSO is dismissed with prejudice.  The remainder of Plaintiff's claims involve a genuine dispute of material facts.

**THUS DONE AND SIGNED**, this ⎽⎽⎽ day of September, 2012.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE